**WO**                                                                                                SM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Douglas Wayne Derello, Jr.,

                   Plaintiff,

v.

Unknown Backes, et al.,

                   Defendants.

No.   CV-22-00348-PHX-MTL (JFM)

**ORDER**

Plaintiff Douglas Wayne Derello, Jr., who is currently confined in the Arizona State Prison Complex (ASPC)-Eyman, Special Management Unit (SMU) I in Florence, Arizona, brought this civil rights case pursuant to 42 U.S.C. § 1983.  (Doc. 5.)  Defendants move for summary judgment, and Plaintiff opposes.[1]  (Docs. 38, 63.)

The Court will grant the Motion for Summary Judgment and terminate the action.

**I.    Background**

On screening Plaintiff's First Amended Complaint (Doc. 5) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment deliberate indifference claims in Count One against Defendants Deputy Warden Stickley and Correctional Officer (CO) IV Backes based on their alleged failure to transfer Plaintiff to an ADA cell and in Count Two against Defendant CO III Morris for instructing a porter to lift Plaintiff while Plaintiff was injured and for failing to contact the medical department

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 42.)

1    or transport Plaintiff to the medical department after Plaintiff fell.  (Doc. 10.)  The Court

2    ordered Defendants Stickley, Backes, and Morris to answer the claims against them and

3    dismissed the remaining claims and Defendants.  (*Id.*)

4    Defendants now move for summary judgment and argue that Plaintiff failed to

5    exhaust the available administrative remedy.  (Doc. 38.)

6    **II.    Summary Judgment Standard**

7    A court must grant summary judgment "if the movant shows that there is no genuine

8    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

9    Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

10   movant bears the initial responsibility of presenting the basis for its motion and identifying

11   those portions of the record, together with affidavits, if any, that it believes demonstrate

12   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

13   If the movant fails to carry its initial burden of production, the nonmovant need not

14   produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,

15   1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts

16   to the nonmovant to demonstrate the existence of a factual dispute and that the fact in

17   contention is material, i.e., a fact that might affect the outcome of the suit under the

18   governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

19   jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.

20   242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

21   Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its

22   favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,

23   it must "come forward with specific facts showing that there is a genuine issue for trial."

24   *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal

25   citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

26   At summary judgment, the judge's function is not to weigh the evidence and

27   determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,

28   477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw

all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

### III.  Relevant Facts

#### A.  Arizona Department of Corrections (ADC) Grievance Procedure

ADC Department Order (DO) 802, "Inmate Grievance Procedure," effective date October 16, 2016, governed the prisoner grievance process at all times relevant to this lawsuit.  (Doc. 39, Defs.' Statement of Facts ¶ 4.)  A written copy of the grievance policy is available to prisoners at each prison unit's resource library.  (*Id.* ¶ 7.)  Prisoners also receive a written and oral explanation of the grievance procedure during intake and as part of the orientation process when they transfer to a new facility.  (*Id.* ¶ 8.)

#### 1.  Medical Grievances

Under DO 802, there is a three-step process for exhausting medical grievances.  (*Id.* ¶ 10.)  First, prisoners must attempt to resolve their complaints through informal means by discussing the issue with staff in the area most responsible for the complaint.  (*Id.* ¶ 11.)  If a prisoner is unable to resolve his or her complaint through informal means, the second step is for the prisoner to submit an Informal Complaint on an Informal Complaint Resolution Form to the prisoner's assigned CO III.  (*Id.* ¶ 12.)  The prisoner must submit the Informal Complaint within 10 workdays of the incident underlying the complaint.  (*Id.* ¶ 13.)  These first two steps apply to both medical and non-medical grievances.  (*See* Doc. 39-2 at 41–42, DO 802 § 2.0.)  If the Informal Complaint concerns a medical issue, the CO III forwards the Informal Complaint to the Contract Facility Director of Nursing who investigates the issue and has 15 workdays to respond to the Informal Complaint using the Inmate Informal Complaint Response form.  (Doc. 39 ¶¶ 14–15.)

If the prisoner is dissatisfied with the Informal Complaint response, or if the Contract Facility Director did not respond within the timeframes specified in DO 802, the third step of the procedure is for the prisoner to file a Formal Grievance.  (*Id.* ¶ 16.)  The prisoner must file the Formal Grievance with the Grievance Coordinator within 5 workdays of receiving the response to the Informal Complaint.  (*Id.* ¶ 17.)  The Grievance

Coordinator forwards the grievance to the Contract Facility Health Administrator (FHA) who has 15 workdays to respond to the grievance.  (*Id.* ¶ 19.)  The FHA's decision is final and constitutes the final step of the grievance process.  (*Id.* ¶ 20.)

### 2.    Standard (Non-Medical) Grievances

DO 802 outlines a four-step process for exhausting non-medical grievances.  The first two steps are similar to the medical grievance process: prisoners must attempt to resolve their complaints informally and then submit an Informal Complaint if they are unable to do so.  (*See* DO 802 §§ 2.1–2.2, Doc. 39-2 at 41–44.)  However, for non-medical grievances, Informal Complaints are investigated and responded to by the unit CO III.  (*Id.* at § 2.3.1, Doc. 39-2 at 42.)  If a prisoner is dissatisfied with the CO III's response, within 5 workdays, the prisoner may file a Formal Grievance to the Deputy Warden, who has 15 workdays to respond.  (*Id.* at § 3.6.)  If a prisoner is dissatisfied with the Deputy Warden's response, within 5 workdays, the prisoner may file an appeal to the ADC Director, who has 30 calendar days to respond.  (*Id.* at § 4.0, Doc. 39-2 at 43.)

### B.    Plaintiff's Relevant Grievance History

ADC reviewed its records for grievances filed by Plaintiff during the relevant times regarding his claims in this action.  (Doc. 39 ¶ 22.)  The search revealed only one Formal Grievance, submitted on December 5, 2021 and addressed to the Deputy Warden (DW) stating, in relevant part: "I submit this Grievance to you, as a lack of medical attention has posed a threat to my safety.  I have tried the route of filing of submitting Medical Grievances, to no avail.  DW, I am in excruciating pain and, in about 40 days have fallen three times." (Doc. 39-2 at 54.)  The Formal Grievance was received on December 7, 2021 and returned as unprocessed because Plaintiff did not provide proof of submitting an Informal Complaint Resolution to his assigned CO III and failed to specify what attempts were made to resolve the complaint informally.  (*Id.* at 53.)

In a Formal Grievance dated November 14, 2021, Plaintiff discusses the events underlying his claims in Count Two.  (Doc. 39 ¶ 31.)  The grievance states, in relevant part:

> I am grieving [Defendant] Morris because of my fall [on] 11-10-2021. More should have been done by them. Officers Morris, Clark, and Tan . . . worked together to [] conceal my fall in the shower an[d] injury. They did not follow []policy and procedure to call in an ICS [Incident Command System] when there is a[n] injury, they did not notify medical, they allowed another Inmate to lift plaintiff further causing added injury. Then [Defendant] Morris, wheeled me back into my cell telling me in front of other Inmates note to be no "snitch." Then when I asked . . . for at least some medical ice . . . [Defendant] Morris [] yelled stop acting like a fucken [sic] baby Derello, and act like a man and [did not bring] ice.

(Doc. 39-2 at 84.) The grievance was marked as being received by a CO, but it was not signed by the Grievance Coordinator or assigned a case number. (*Id.*)

In a Formal Grievance addressed to the Grievance Coordinator and dated November 14, 2021, Plaintiff describes the events underlying his claim in Count One:

> On 9-8-21, [Defendant Stickley] purposely caused further pain/suffering to [Plaintiff] by not addressing any of his medical concerns or, his numerous requests to her [and Defendant Backes] to be placed back into an ADA cell. Even after a walk through (9-8-21) with Complex Warden Kimble [and] the NROD, whereby [Defendant Stickley] was told to do so.

(Doc. 64 at 23.) The grievance was marked as being received by a CO, but it was not signed by the Grievance Coordinator or assigned a case number. (*See id.*)

Plaintiff provided copies of two Grievance Appeals, both addressed to the ADC Director. One appeal is dated as being written by Plaintiff January 25, 2021 but received by a CO on January 25, 2020 and discusses the events underlying the claims in Count One; and the other appeal is dated as being written and received on January 4, 2021 and discusses the events described in Count Two. (Doc. 39 ¶¶ 34, 35.) The January 25, 2020/2021 appeal states:

> DW Stickley has purposely caused further pain/suffering to [Plaintiff] by not addressing any of his medical concerns. [Stickley] failed to assist [Plaintiff] on 9-8-2021, when do[ing] a walk through with the Complex Warden/NROD. By not

> moving [Plaintiff] to an ADA cell.  And to help him with his request for medical attention on 12-05-21. . . . Stickley has been retaliating against [Plaintiff] since his filing [a grievance] against her.

(Doc. 39-2 at 81.)  In the January 4, 2021 appeal, Plaintiff states that he did not receive a response to his November 14, 2021 Formal Grievance regarding Defendant Morris's actions and that the "administration" was "covering up the fact that d[ue] to [Defendant Morris's] actions . . . [Plaintiff] was further injured by an [inmate] lifting [him] and being denied medical [care]."  (*Id.* at 83.)  Both appeals were marked as being received by a CO, but neither appeal was signed by the Grievance Coordinator or assigned a case number. (*Id.* at 81, 83.)

Plaintiff also provided copies of additional Grievance Appeals that he purportedly submitted—all addressed to the ADC Director—dated July 25, 2021; November 9, 2021; December 14, 2021; December 16, 2021; June 27, 2021; August 28, 2021; and February 5, 2022. (Doc. 64 at 8–11, 14–16, 19–20.)  In the appeals, Plaintiff complains that officials were not responding to his grievances.  (*See id.*)  The appeals were marked as being received by a CO, but none of them were signed by the Grievance Coordinator or assigned a case number, and copies of the corresponding Formal Grievances and Informal Complaints were not provided.  (*See id.*)

## IV. Exhaustion

### A. Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court.  *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005).  The prisoner must complete the administrative review process in accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

1    The defendant bears the initial burden to show that there was an available

2    administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d

3    1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must

4    demonstrate that applicable relief remained available in the grievance process). Once that

5    showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in

6    fact, exhausted administrative remedies or "come forward with evidence showing that there

7    is something in his particular case that made the existing and generally available

8    administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The

9    ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate

10   if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a

11   failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

12   If summary judgment is denied, disputed factual questions relevant to exhaustion

13   should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of

14   exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted

15   administrative remedies, that administrative remedies were not available, or that the failure

16   to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.*

17   at 1171.

18   **B.    Discussion**

19   In Count One, Plaintiff alleges that, due to Defendant Backes and Stickley's actions,

20   inactions, and retaliation, he was left to suffer in a non-ADA cell from July 21, 2021 until

21   October 15, 2021. (*See* Doc. 10 at 4–5.) In Count Two, Plaintiff alleges that, on November

22   10, 2021, he fell in the shower, and, despite Plaintiff's complaints of pain, Defendant

23   Morris failed to alert the medical unit, and instead, told a porter to lift Plaintiff up and put

24   him in a wheelchair, causing Plaintiff additional pain. (*See id.* at 5–6.)

25   Defendants have presented evidence showing that the administrative remedy as

26   outlined in DO 802 was available to Plaintiff at the relevant times. Defendants argue that

27   Plaintiff did not properly exhaust his claims pursuant to the procedure outlined in DO 802,

28   and Plaintiff contends that he exhausted his claims. Defendants contend that the only

grievance Plaintiff submitted regarding either of his claims in this action is the December 5, 2021 Formal Grievance and that all of the other grievance documents provided in the record were never submitted as evidenced by their lack of case numbers and signatures from the Grievance Coordinator.  (Doc. 66 at 5.)  Plaintiff argues that some of his grievances went unanswered in the past, and when he would move on to the next step, his grievances would be returned as unprocessed for not attaching the response from the previous step. (Doc. 63 at 2, 5.) Even assuming that Plaintiff submitted all of the grievance documents that have been provided in the record, the facts do not create a genuine issue of material fact that Plaintiff properly exhausted his claims or that the grievance process was unavailable to him.

DO 802 requires prisoners to submit an Informal Complaint prior to filing a Formal Grievance regardless of whether a grievance was processed as a medical complaint or a non-medical complaint.  Plaintiff's December 5, 2021 Formal Grievance was returned as unprocessed for failing to follow this step of the grievance procedure.  Likewise, there is no evidence showing that Plaintiff submitted Informal Complaint forms for any of the other grievances that have been presented in the record.  To the extent Plaintiff argues that he was not required to comply with the requirements of the DO 802 grievance process because he believed it would be futile, based on prison staff's lack of responsiveness to grievances in the past, this is not a basis for excusing a failure to exhaust.  *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements").  For purposes of exhaustion, a prisoner must actually file a grievance and have it rejected; "he cannot anticipate that the process will be futile and bypass it."  *Pogue v. Calvo*, No. C03-0803 VRW (PR), 2004 WL 443517 (N.D. Cal. Feb. 24, 2004).

Moreover, with respect to the timing of Plaintiff's grievances, DO 802 requires that—for both medical and non-medical grievances—Informal Complaints must be submitted within 10 workdays of the events underlying the complaint and that prison officials have 15 workdays from the date of receipt to respond.  (*See* DO 802 § 2.0, Doc.

39-2 at 41–42.)  Here, Plaintiff's claim in Count One arose, at the latest, on October 15, 2021 based on Plaintiff's allegation that he was left in a non-ADA cell until that date. Therefore, Plaintiff's Informal Complaint for his claim in Count One was due, at the latest, by October 29, 2021, and the informal response was due, at the very latest, by November 19, 2021.  Plaintiff's claim in Count Two arose on November 10, 2021, the day he fell in the shower.  Thus, Plaintiff's Informal Complaint for his claim in Count Two was due, at the latest, by November 26, 2021 (excluding the Veteran's Day and Thanksgiving holidays), and the response was due, at the very latest, by December 17, 2021.  Even if Plaintiff submitted Informal Complaints for his claims in this case, he did not provide any facts regarding the specific dates he submitted them, and absent this information, Plaintiff has failed to create a genuine issue of material fact that he filed Informal Complaints within the timeframe provided under DO 802 or that he waited the appropriate amount of time for an informal response before filing the November 14, 2021 Formal Grievances.

Additionally, the contents of Plaintiff's December 5, 2021 Formal Grievance, were not sufficient to put prison officials on notice of Plaintiff's claims in Counts One and Two. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution[.]"  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  A prisoner must provide enough information to put prison officials on notice of a problem and to allow them "to take appropriate responsive measures."  *Griffin*, 557 F.3d at 1121.  Plaintiff's December 5, 2021 Formal Grievance does not mention any facts concerning his ADA cell claim in Count One or his shower fall claim in Count Two.  Accordingly, this grievance did not exhaust Plaintiff's claims in this action.

Finally, to the extent Plaintiff argues that his December 5, 2021 Formal Grievance was improperly rejected because he was not required to submit a verbal or written informal complaint pursuant to the emergency complaint provisions under DO 802 §§ 1.8 and 1.9 (*see* Doc. 63 at 4), Plaintiff did not designate anywhere on the grievance form that it was an emergency, and even if he had, under DO 802 § 1.8.2, a complaint does not automatically become an emergency merely because a prisoner designates it as one.  (Doc.

39-2 at 41.)

On this record, Plaintiff has not refuted Defendants' evidence or otherwise created a genuine issue of material fact that an administrative remedy was available and that he failed to exhaust it with respect to his claims in this action.  Based on the foregoing, the action will be dismissed without prejudice for failure to exhaust the available administrative remedies.  *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (if a court grants summary judgment on non-exhaustion grounds, dismissal is without prejudice).

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 38).

(2)     Defendants' Motion for Summary Judgment (Doc. 38) is **granted**, and the action is terminated **without prejudice** for failure to exhaust the available administrative remedy.  The Clerk of Court must enter judgment accordingly.

Dated this 8th day of August, 2023.

Michael T. Liburdi
United States District Judge